## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

TORANIO HARGRAVES,

        Defendant.

Criminal Action No. 22-91-GBW

---

David C. Weiss, Jennifer K. Welsh, U.S. ATTORNEY'S OFFICE, Wilmington, Delaware.

    *Counsel for Plaintiff*

Eleni Kousoulis, David L. Pugh, FEDERAL PUBLIC DEFENDER'S OFFICE, Wilmington, Delaware.

    *Counsel for Defendant*

## MEMORANDUM OPINION

April 18, 2024
Wilmington, Delaware

1

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Presently before this Court is Defendant Toranio Hargraves' ("Hargraves" or "Defendant") Motion to Dismiss the Indictment, D.I. 28, charging Hargraves with Possession of a Firearm by a Felon, in violation of 18 U.S.C. § 922(g)(1) ("Section 922(g)(1)"). Defendant contends that § 922(g)(1) is unconstitutional both on its face and as applies to him under recent Supreme Court and Third Circuit authority. The Government opposes Defendant's Motion. D.I. 32. For the reasons set forth below, Defendant's Motion is denied in all respects.

## I.   BACKGROUND

The Government alleges that officers witnessed a vehicle making an illegal left turn from the right lane on December 7, 2021. D.I. 32 at 2. When officers stopped the vehicle, they discovered that Hargraves was driving the vehicle with a suspended license and noticed a marijuana smell coming from the vehicle. *Id.* Officers searched the car and found a gun in a compartment under the gear shaft. *Id.* The gun had been reported stolen in April 2020. *Id.* Hargraves' DNA, but not the DNA of the two passengers, was found on the magazine of the gun. *Id.* Hargraves was subsequently placed under arrest. *Id.*

This is not Hargraves' first interaction with the criminal justice system. D.I. 32 at 2-3. In 2012, Hargraves was convicted of federal felony robbery and was sentenced to five (5) years in prison. D.I. 32 at 3. While on supervised release, Hargraves committed a home invasion in December 2016, during which he pointed a gun at a mother and asked her "how much do you love your son?" *Id.* He was convicted in state court of robbery and conspiracy and sentenced to five (5) years' imprisonment suspended after 199 days. *Id.* In October 2018, Hargraves broke into his ex-girlfriend's house and allegedly threatened her. *Id.* Hargraves was subsequently convicted of criminal mischief and served two months in custody until December 2018. *Id.*

Defendant files the present Motion to Dismiss challenging the constitutionality of § 922(g)(1) on grounds that the statute is unconstitutional both on its face and as applied to Hargraves following the Supreme Court's decision in *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022) ("*Bruen*") and the Third Circuit's decision in *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) ("*Range*"). D.I. 28.

## II.   LEGAL STANDARD

The Second Amendment of the United States Constitution holds that "the right of the people to keep and bear Arms shall not be infringed." U.S. Const. amend. II.

However, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *D.C. v. Heller*, 554 U.S. 570, 626 (2008). As the Supreme Court recognized in *Heller*, "[f]rom Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* The *Heller* Court recognized, for instance, the longstanding prohibitions on the possession of firearms by felons. *Id.* at 570; *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill,' ... *We repeat those assurances here*.") (emphasis added) (citation omitted).

Recently, the Supreme Court revisited its Second Amendment jurisprudence in *Bruen*. 142 S. Ct. 2111. The Court in *Bruen* considered a constitutional challenge to a New York State licensing scheme that criminalized the possession of "'any firearm' without a license, whether inside or outside the home." *Id.* at 2123 (citation omitted).

In ruling on the constitutionality of the statute, the Supreme Court recognized that, following its prior holdings in *Heller* and *McDonald*, the Courts of Appeals adopted a two-step framework for analyzing Second Amendment challenges. *Id.* at

2125-26. Under the first step of this analysis, the so-called historical evidence step, the government was required to prove that its firearms regulation "is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127. If the regulated conduct fell beyond the Second Amendment's historical and original scope, the activity was not protected, and the analysis ended there. *Id.* at 2126. If, however, "historical evidence at this step is inconclusive or suggests that the regulated activity is not categorically unprotected, the courts generally proceed to step two," which analyzes "how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right." *Id.*

The Supreme Court in *Bruen* rejected this two-step analysis, finding that it was "one step too many." *Id.* at 2127. According to the Court, "[s]tep one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history. But *Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context." *Id.* Thus, the Court found that, when it is determined that the Second Amendment's plain language protects an individual and his conduct, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127, 2131. While recognizing that this historical approach can be difficult in circumstances that raise "unprecedented societal concerns or dramatic technological

changes," the Court explained that courts could conduct their analysis using analogical reasoning and "determin[e] whether a historical regulation is a proper analogue for a distinctly modern firearm regulation . . . ." *Id.* at 2132. According to the Court, "analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*. *Id.* (emphasis in original). "So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.*

Shortly after *Bruen*, the Third Circuit in *Range* considered the constitutionality of § 922(g)(1) as it applied to Appellant Brian Range, who had been convicted of making a false statement to obtain food stamps in violation of Pennsylvania law in 1995. 69 F.4th at 101. Range sought a declaration from the United States District Court for the Eastern District of Pennsylvania that § 922(g)(1) violates the Second Amendment as applied to him. *Id.* at 99.

Applying the Supreme Court's *Bruen* decision, the Third Circuit agreed that § 922(g)(1) was unconstitutional as it applied to Range. *Id.* at 106. In reaching this decision, the Third Circuit interpreted *Bruen's* historical framework as requiring two steps:

> After *Bruen*, we must first decide whether the text of the Second Amendment applies to a person and his proposed conduct. If it does,

the government now bears the burden of proof: it "must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."

*Id.* at 101 (quoting *Bruen*, 142 S. Ct. at 2127).

Under the first step of the *Bruen* framework, the Third Circuit found that Range was one of "the people" protected by the Second Amendment and that his request "to possess a rifle to hunt and a shotgun to defend himself at home," was protected Second Amendment conduct. *Id.* at 100. The Third Circuit then examined whether the Government met its burden to demonstrate that stripping firearms from one convicted of Range's prior felony is consistent with the Nation's historical tradition of firearm regulation and concluded that it did not. *Id.* at 103. According to the Third Circuit, the Government failed to show that "our Republic has a longstanding history and tradition of depriving people *like Range* of their firearms." *Id.* at 106 (emphasis added). Thus, the Court held that § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights. *Id.* The Third Circuit noted, however, that its decision was a "narrow one" that found only that § 922(g)(1) was unconstitutional as to Range. *Id.* at 106. Judge Ambro's concurrence emphasized this point and added that *Range* "does not spell doom for § 922(g)(1)[] [which] remains 'presumptively lawful.'" *Id.* at 110 (Ambro, J., concurring).

## III.   DISCUSSION

Defendant argues that, following *Bruen* and *Range*, § 922(g)(1) is unconstitutional both on its face and as it applies to him. D.I. 28 at 1. Having reviewed the relevant briefing, the Court finds that the Government has carried its burden of showing that § 922(g)(1) is constitutional as it applies to Defendant, and Defendant has not proven that the statute is facially invalid. Thus, Defendant's Motion to Dismiss is DENIED.

### A.   *The Government has met its burden to prove that* § 922(g)(1) *is constitutional as applied to Defendant.*

In determining whether § 922(g)(1) is constitutional as it applies to Defendant, *Bruen* and *Range* instruct the Court to "first decide whether the text of the Second Amendment applies to a person *and his proposed conduct*." *Range*, 69 F.4th at 101. If a defendant can show that he is a "person" protected under the Second Amendment and that his conduct is protected conduct, the burden shifts to the government to "prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.'" *Id.* (citing *Bruen*, 142 S. Ct. at 2127).

Defendant argues that, like the defendant in *Range*, he is a "person" protected under the Second Amendment "[d]espite his criminal history." D.I. 28 at 9. The

Government and this Court agree.[1]  D.I. 32 at 17.  Yet, *Bruen* also requires Defendant

to show that he is engaged in conduct that the Second Amendment protects.  *See*

*Range*, 69 F.4th at 101.  In support of his Motion, Defendant contends that his

"alleged conduct" is "possessing a firearm."  D.I. 28 at 11.  However, the Supreme

Court has long explained that "the [Second Amendment] right was not a right to

keep and carry any weapon whatsoever in any manner whatsoever and for whatever

purpose."  *Bruen*, 142 S. Ct. at 2128.  Rather, "[l]ike most rights, the right secured

by the Second Amendment is not unlimited."  *Heller*, 554 U.S. at 626.  In *Bruen*, the

Court held that "individual self-defense is 'the central component' of the Second

Amendment right;" thus, possessing a firearm for self-defense was a protected

activity.  *Bruen*, 142 S. Ct. at 2118 (citing *McDonald*, 561 U.S. at 767).  Similarly,

in *Range*, the Third Circuit found that the question of whether Range was engaged

in "protected" conduct was easily answered where he sought "a rifle to hunt and a

shotgun to defend himself at home."  *Range*, 69 F.4th at 103.  These statements

indicate that the Court must consider Defendant's conduct beyond his claim that the

Second Amendment merely applies to his possession of a firearm.

Here, the Government alleges that Defendant possessed a loaded stolen

handgun, which was concealed in a hidden compartment in a marijuana-scented

---

[1] *Range* holds that "the people," as used throughout the Constitution, "unambiguously refers to
all members of the political community, not an unspecified subset."  *Range*, 69 F.4th at 101.
Thus, Defendant is a "person" for purposes of the Second Amendment.

vehicle that Defendant operated without a valid driver's license. D.I. 32 at 2-3. *Id.* Resolving all reasonable inferences in the Government's favor, Defendant's actions are not those of someone with a lawful Second Amendment purpose. *See United States v. Gore*, 2023 WL 2141032, at *4 (S.D. Ohio Feb. 21, 2023) (observing that there is "no lawful purpose for which a private citizen would knowingly possess a stolen firearm"). Rather, Defendant's conduct speaks, at the very least, to his dangerousness to society, a relevant factor under *Range* that the Court considers below.

Even if Defendant was engaged in protected Second Amendment conduct, the Court still finds that § 922(g)(1) is constitutional as it applies to Defendant. Defendant, relying on the Third Circuit's holding in *Range*, argues that restricting his right to bear arms is inconsistent with historical firearm restrictions, which were "'not about felons in particular or even criminals in general'" but were rather "'about threatened violence and the risk of public injury.'" D.I. 28 at 20-21 (quoting *Kanter v Barr*, 919 F.3d 437, 456 (7th Cir. 2019) (Barrett, J. dissenting)). Yet, this matter is highly distinguishable from *Range*. Range, unlike Defendant, was convicted of a misdemeanor of making a false statement to obtain food stamps. *Range*, 69 F.4th at 98. Further, unlike Defendant, Range successfully completed his probationary sentence "without incident" and committed no other crimes for over 28 years. *Id.* The Third Circuit clarified that its decision in *Range* was "a narrow one" in which

the court found no history or tradition supported "depriving people *like Range* of their firearms." *Id.* at 106 (emphasis added).

Defendant, on the other hand, has a far more extensive and serious criminal history. His prior convictions include convictions for robbery and conspiracy to commit robbery, both of which were committed with the use of a firearm. When committing the robbery charged under Delaware law in 2016, Defendant allegedly pointed a gun at a mother and asked her "how much do you love your son?" D.I. 32 at 26. Defendant was on supervised release from a prior conviction at the time. *Id.* at 3. When committing the conspiracy to commit robbery charged under federal law in 2012, Defendant participated in planning a robbery of a drug stash house at gunpoint. *Id.* Defendant's past crimes are materially different than those of Range, and Defendant's pattern of using guns to commit violent and dangerous crimes makes the Third Circuit's analysis in *Range* distinguishable from this matter.

The Court agrees with the Government that the disarming of individuals who pose a danger to society is deeply rooted in our country's legal traditions. *See* D.I. 32 at 12. To determine whether § 922(g)(1) is in line with this historic tradition, *Bruen* mandates that the Court determine whether the historical regulation and the modern-day regulation are "relevantly similar under the Second Amendment." *Bruen*, 142 S. Ct. at 2132. Under *Bruen,* two metrics are relevant to this analysis:

"how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2133. Applying this standard, the Court finds that the Government has raised proper historical analogues to § 922(g)(1) to survive dismissal.

First, like the historical traditions identified by the Government, the "why" behind § 922(g)(1)'s firearm prohibition to individuals with past robbery convictions is clear: the goal is to protect the public from disruptive and dangerous conduct. For instance, the Government cites restrictions ranging from the 17th century which sought to disarm those who threatened public safety and disturbed the orderly function of society. *Id.* at 12 (citing a "17th century statute [that] empowered the government to 'seize all arms in the custody or possession of any person' who was 'judge[d] dangerous to the Peace of the Kingdom'"), *id.* at 14 (highlighting 19th century laws requiring "'those threatening to do harm' to 'post bond before carrying weapons in public'"), *id.* (citing an 1866 order restricting "disorderly [], vagrant, or disturber[s] of the peace" from bearing arms). The "why" of firearm regulation is even clearer for someone like Defendant, who had already been convicted of a prior crime involving a firearm. *United States v. Hedgepath*, 2023 WL 7167138, at *6 (E.D. Pa. Oct. 31, 2023).

Crimes such as robbery are paradigmatic violent crimes: those who commit such crimes are dangerous to the public peace. *See* 18 U.S.C. 1951(b) ("The term

'robbery' means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence . . ."); *cf. United States v. Cooper*, 1:23-cr-00004, Dkt. No. 37 (D. Del. Nov. 27, 2023) (finding drug trafficking to be a dangerous crime within the historical tradition of regulation, despite not being violent).

As to "how" § 922(g)(1) burdens Second Amendment rights, § 922(g)(1) prohibits individuals who, like Defendant, have been convicted of felony offenses from possessing firearms. The same is true with the Government's referenced analogues, which restricted individuals deemed to be dangerous and disruptive to society from possessing a firearm. D.I. 32 at 25 ("'Legislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms. Whether those actions are best characterized as restrictions on persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness, Congress acted within the historical tradition when it enacted § 922(g)(1).'" (citing *United States v. Jackson*, 69 F.4th 495, 505 (8th Cir. 2023))). Thus, the Government has identified historical analogues that are relevantly similar to § 922(g)(1), and the Court finds that § 922(g)(1), as applied to an individual like Defendant who has been convicted of recent felony robbery offenses, "is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126.

13

*B. Defendant has not shown that § 922(g)(1) is unconstitutional on its face.*

Finally, Defendant's facial challenge to the validity of § 922(g)(1) is unfounded. To succeed on a facial challenge, Defendant "must establish that no set of circumstances exists under which [§ 922(g)(1)] would be valid." *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011). Clearly, there is historical support for disarming someone with a demonstrably violent criminal history. *See* Part III.A, *supra*. In both *Heller* and *McDonald*, the Supreme Court recognized the "longstanding prohibitions on the possession of firearms by felons," which the Court noted was "presumptively lawful." *Heller*, 554 U.S. at 626-27 & n.26; *McDonald*, 561 U.S. at 786. As neither *Bruen* nor *Range* invalidate, alter, or overturn the legal principles and analysis set forth in *Heller* and *McDonald*,[2] these holdings stand. Thus, Defendant cannot prove that § 922(g)(1) is unconstitutional in all of its applications, and his facial challenge to § 922(g)(1) fails.

---

[2] *See e.g., Bruen*, 142 S. Ct. at 2131 ("The test that we set forth in *Heller* and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding."); *id.* at 2132-2133 ("*Heller* and *McDonald* point toward at least two metrics [to assess whether a historical regulation is a proper analogue for a modern firearm regulation]: how and why the regulations burden a law-abiding citizen's right to armed self-defense.").

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **DENIED**.  The Court will issue an Order consistent with this Memorandum Opinion.